IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OSTEOMED, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1045-K |
| | § | |
| KOBY INDUSTRIES, L.P. (d/b/a KOBY | § | |
| SURGICAL), KOBY INDUSTRIES, | § | |
| INC., LARRY WEATHERFORD and | § | |
| PERRY FORRESTER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Plaintiff's Motion to Compel Arbitration and (2) Defendants' Motion to Dismiss Case or, Alternatively, Stay Case Pending Arbitration. For the following reasons, the Court **GRANTS** Plaintiff's motion and **GRANTS in part** and **DENIES in part** Defendants' motion.

## I.    Factual and Procedural Background

Plaintiff Osteomed, L.P. ("Plaintiff") is in business related to medical devices, surgical implants, and powered surgical instruments, but most notably surgical devices for surgeons such as "bone screws." Defendants Koby Industries, L.P. (d/b/a Koby Surgical), Koby Industries, Inc., Larry Weatherford, and Perry Forrester (collectively "Defendants") developed a podiatric device, "IsoGard System," which was marketed by Defendants under the trade name "Koby Surgical." Plaintiff expressed interest in the

IsoGard System.  On April 27, 2004, Plaintiff and Defendants entered into a "Product and Technology Purchase, and Royalty Agreement" ("Agreement") in which Plaintiff acquired the rights to the IsoGard System.  Plaintiff "re-branded" the IsoGard System as the "KobyGard System."  Plaintiff contends that the Agreement transferred the rights of the "KobyGard System," including the name "Koby Surgical," to Plaintiff.  The Agreement included an arbitration clause as well as a provision that Texas law would govern.

Plaintiff contends that since the Agreement was effected, Defendants have marketed "knock-off bone screws" using the same trade name, "Koby Surgical," as was originally attached to the IsoGard System.  This, Plaintiff claims, has caused confusion among customers and potential customers.  Plaintiff also alleges that Defendants cause added confusion by using similar packaging, signs, product arrangements, and packaging colors.  In addition, Defendants' website employs strikingly similar colors and imagery to that of the Plaintiff's.

II.    Analysis

A.    Applicable Law

In deciding a motion to compel arbitration, the Court employs a two-part test: (1) a valid agreement to arbitrate must exist between the parties; and (2) the dispute in question must fall within the scope of that arbitration agreement.  *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001).  Under Texas law, whether a claim is subject to the arbitration clause depends on the factual

allegations contained in the complaint, not the causes of action asserted. *See Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998). A claim is arbitrable if it is so interwoven with the underlying contract that it could not stand alone; however, it is not arbitrable if the claim is so independent of the contract that it can be maintained without reference to the contract. *See id.* This test seeks to insure that a claim "formally labeled a tort" is not in actuality "a breach of contract claim or based on a breach of contract." *Id.* The Court must look to the facts forming the basis of each claim to determine whether it "'could be maintained without reference to the contract,'" not simply whether it references the contract. *Id.* (quoting *Valero Energy Corp. v. Wagner & Brown*, 777 S.W.2d 564, 566 (Tex. App.–El Paso 1989)).

### B.    Parties' Claims and Counter-Claims

#### 1.    Defendants' Counterclaims

Defendants concede in the various briefing before the Court that its counterclaims are subject to arbitration. Consequently, the Court grants Plaintiff's motion to compel arbitration of Defendants' counterclaims. Defendants' counterclaims are stayed pending completion of arbitration.

#### 2.    Plaintiff's Claims

What the parties continue to dispute is whether Plaintiff's claims are also subject to arbitration. Plaintiff asserts the following claims: (1) False Designation of Origin in Violation of Lanham Act; (2) Federal Trade Dress Infringement in Violation of Lanham

Act; (3) Unfair Competition Under Texas Law–Palming or Passing Off; (4) Civil Conversion; (5) Fraudulent Inducement; (6) Fraud; and (7) Civil Conspiracy.

Both parties concur the Agreement contains an arbitration clause, section 17(b), which requires:

> Any dispute, controversy or claim arising out of or in connection with this Agreement, or the breach, termination or validity thereof, which cannot be amicably resolved by the parties within thirty (30) days after receipt by one party of written notice from the other party that such a controversy or claim exists shall be settled by final and binding arbitration. . . .

Therefore, the first part of the test, whether a valid agreement to arbitrate exists, is met. *See PaineWebber*, 260 F.3d at 462. It is the second factor, whether the claims Plaintiff asserts fall within the scope of the arbitration agreement, that is in dispute. Plaintiff argues that it's claims, unlike Defendants', do not.

Plaintiff contends that Counts One through Three fall outside the scope of the arbitration clause and, therefore, are not arbitrable. Plaintiff does not make any argument as to whether the scope of the arbitration clause reaches Counts Four through Seven: civil conversion, fraudulent inducement, fraud and civil conspiracy. The Court concludes that the claims in Counts Four through Seven are within the scope of the arbitration clause. These claims clearly arise out the Agreement and cannot stand alone, as they either require reference to the Agreement as a legal matter or are based on a breach of the Agreement. *See Ford*, 141 F.3d at 250; *A & A Global Ind., Inc. v. Wolfe*, No.

3:01-CV-1515-D, 2001 WL 1343628, *4 (N.D. Tex. Oct. 29, 2001)(Fitzwater, J.). These claims, therefore, will be stayed pending the completion of arbitration.

Plaintiff does argue that its Lanham Act and Unfair Competition claims, Counts One through Three, are independent of the Agreement and fall outside the scope of the arbitration clause. Specifically, Plaintiff contends that the Agreement is "'legally irrelevant' and 'purely evidentiary.'" The Court agrees these claims can stand alone from the Agreement. *See Ford*, 141 F.3d at 250. To prevail on the false designation of origin claim and trade dress infringement claims, Plaintiff must establish that its product design has acquired secondary meaning. *See Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F.Supp.2d 639, 644 (N.D. Tex. 2004)(Fish, J.). Neither one of these claims requires as a legal matter that Plaintiff refer to the Agreement.

This court previously addressed whether a Lanham Act claim could stand independent of the underlying contract which contained an arbitration clause. *Wolfe*, 2001 WL 1343628 at *4. The court held that, "regardless of the validity of the assignment purportedly made by the . . . agreement, reference to the agreement is required only as an evidentiary matter (for instance, to show the source of plaintiffs' ownership of the trademark on which they sue), not as a legal matter in order for plaintiffs to maintain their Lanham Act claim." *Id.* (arbitration clause language almost identical to that in the instant case); *see also Ford*, 141 F.3d at 251-52 (legally similar arbitration clause language where Fifth Circuit affirmed district court's denial of motion to compel arbitration of Lanham Act claim, agreeing plaintiff could maintain Lanham

Act claim without referring to the underlying agreement).  Accordingly, the Court denies Defendants' motion to compel arbitration of Counts One and Two of Plaintiff's complaint.

In Count Three, Plaintiff makes a claim of unfair competition.  To maintain this claim, Plaintiff must establish that (1) its trade name has acquired a secondary meaning through usage and (2) the similarity of the name used by Defendant would be likely to confuse the public.  *See RTLC AG Prod., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex. App.–Dallas, June 27, 2006).  While Plaintiff must establish it owns the trade name "Koby Surgical," reference to the Agreement, if made at all, would only be "an evidentiary matter to indicate the origin of [Plaintiff's] ownership of the [trade name]." *Wolfe*, 2001 WL 1343628, at *4 (anti-dilution claim required plaintiffs to establish ownership of mark or trade name).  This claim, therefore, may also be maintained independent of the Agreement.  Consequently, Plaintiff's claim under Count Three is not subject to arbitration.  Any relief Defendants' motion requests related to Plaintiff's claims in Counts One through Three is expressly denied.

Plaintiff also argues that its complaint was properly filed, and not subject to arbitration, because it is seeking injunctive relief pursuant to section 17(h) of the Agreement:

> In the event of any breach by a party of the terms of this Agreement which would cause any nonbreaching party to be irreparably harmed or for which such nonbreaching party could not be made whole by monetary damages, then in such circumstances such nonbreaching party . . . shall, without

> inconsistency with this Agreement, be entitled to injunctive
> relief . . . in any action instituted in any court of competent
> jurisdiction pursuant to Section 17(I).

The language of section 17(h) provides that Plaintiff may seek injunctive relief based on irreparable harm it has or is suffering. But the language also indicates that section 17(h) must be read in conjunction with section 17(I) which provides:

> Notwithstanding the foregoing provisions of this section 17, any controversy or claim otherwise subject to arbitration under this Agreement may initially be heard by any court of competent jurisdiction to the extent, and only to the extent, that initial submission of the matter to a court is necessary for a party (I) to obtain, on an interim basis (pending the final award of the arbitral tribunal), injunctive relief, compel specific performance or receive other appropriate equitable recourse . . . provided, however, that any matter initially submitted to the court shall be referred by the court to arbitration pursuant to this Section 17 as soon as the matter as to which such interim injunctive relief specify performance, other appropriate equitable recourse or enforcement relief was sought has been heard and ruled upon by the court.

The language of section 17(I) indicates that Plaintiff may seek injunctive relief from a court on an interim basis for any claim which would otherwise be subject to arbitration and that such matter would then be referred to arbitration as soon as ruled on by the court. The Court acknowledges Plaintiff may seek injunctive relief for any of the claims the Court has deemed subject to arbitration. However, to date, there have been no applications made and certainly there has been no appropriate showing of the equitable factors which would entitle Plaintiff to any injunctive relief. Merely requesting such relief generally in a complaint will not suffice. *See* FED. R. CIV. P. 65. Plaintiff still

maintains the rights under these sections to seek injunctive relief in the future related to any of its claims should it so choose.

### C.    Conclusion

Defendants' counterclaims, as conceded to by Defendant, are subject to arbitration pursuant to the language set forth in the Agreement.  Therefore, Plaintiff's motion to compel arbitration of these claims is **granted**.  Defendants' counterclaims are **stayed** pending the completion of arbitration.  Defendants' motion to dismiss case or alternatively stay case pending arbitration is **granted in part** and **denied in part**.  The Court **grants** the motion related to Plaintiff's claims in Counts Four through Seven.  Plaintiff's claims for civil conversion, fraudulent inducement, fraud, and civil conspiracy must be arbitrated subject to the language in the Agreement.  These claims are **stayed** pending the completion of arbitration.  All other relief requested in Defendants' motion is **denied**.

**SO ORDERED.**

Signed November 20th, 2006.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE